Battle, J.
 

 This is a petition, to this Court, for a writ of error, to be directed to the Superior Court of Law for the county of Orange, for the purpose of reversing a judgment rendered in that Court in favor of the defendant in error, against the petitioner, as the executor of James M. Minnis. The counsel for the defendant in error, opposes the petition, upon the ground that this Court has no power to issue a writ of error; and in support of his opposition, he relies upon the cases of
 
 Binford
 
 v. Alston, 4 Dev. Rep. 354, and
 
 American Bible Society
 
 v.
 
 Hollister,
 
 1 Jones’ Eq. Rep. 10.
 

 
 *214
 
 In the first of these cases, RuffiN, J., in delivering the opinion of the court said, “This Court acquires j urisdiction, as a revising tribunal, by
 
 appeal,
 
 and the extent of that jurisdiction, as well as the manner of exercising it, must necessarily differ in many respects from that which is possessed and exercised by those tribunals which take cognizance of causes by writ of error. In these, a release of error may be pleaded, and on the plea being found, then the judgment is, not that the judgment below be affirmed, for they cannot affirm an erroneous judgment, but that the writ of error be barred. (See 2 Williams’ Saunders, 101, and the authorities there cited.) A writ of error is considered as a new action in which the plaintiff may be nonsuited, and when it is brought, contrary to an agreement, the court may compel him to submit to a nonsuit. But, when a case is regularly brought before this Court by appeal, our duty is defined by law, to examine the record, affirm the judgment, if it be correct, or, reversing it as erroneous, render such judgment as, in law, ought to have been rendered in the court from which the appeal was taken.” In the latter case, which decided that a bill of review could not be filed in this Court for the purpose of reviewing an enrolled or recorded decree of this Court, PjsaRsoN, J., said, “The Supreme Court has no original jurisdiction, except to repeal letters patent, and its jurisdiction is limited and expressly confined to the power to hear and
 
 determine
 
 questions of law upon appeal, and cases in equity brought before it by appeal or reinoval; no incidental power or authority is conferred, save only that of issuing such writs and other process as is necessary and proper for the exercise of the limited jurisdiction given to it, that is, to hear and determine cases by appeal or removal.” And in another part of the opinion, he says: “Nq reason can be assigned why cases in equity should be tried a second time in this Court, that does not apply with equal force to the law side; and there can be no writ of error, for error in lawq in a judgment of this Court.” These remarks cannot have the full force of express adjudications upon the very point under consideration, because they were made
 
 arguendo
 
 only,
 
 *215
 
 but they will be found to be fully sustained by the only admissible construction of the act which established this Court, and conferred upon it its jurisdiction. The original act of 1818, (jh. 962 of the Rev. Code of 1820,) entitled “ An act concerning the Supreme Court,” after providing for the establishment of the court by the election of three judges, &c., declares, in the 4th section, “that no cause shall hereafter be transmitted to the Supreme Court, except as hereinafter provided, but on appeal of one of the parties thereunto from the sentence, judgment or decree of a Superior Court,”
 
 &c.
 
 The exception referred to in this section, is provided for in the 5th section, which allows of the removal of equity causes under certain circumstances. The supplemental act, passed at the same session of the assembly, (see ch.
 
 968
 
 of the Rev. Code of 1820,) declares, in the 4th section, “ that the Supreme Court aforesaid shall have power to issue writs of
 
 certiorari, scire
 
 facias,
 
 habeas corpus,
 
 mandamus, and all other writs which may be proper and necessary for the exercise of its jurisdiction, and agreeable to the principle and usages of law.”
 

 Under these acts, it is clear that the court had no power conferred on it to issue a writ cf error. The language is plain and positive that no case at law can be brought before it, but on
 
 appeal,
 
 or by a writ of
 
 certiorari,
 
 which, under certain circumstances, is allowed as a substitute for an appeal; and it follows that any other mode of reviewing the sentence, or j udgmeuf, of the Superior Court of law, is necessarily excluded; and so, we learn, was the understanding of both the bench and the bar. The Rev. Statutes, which were passed in 1836, (see 1 Rev. Stat. ch. 33, sec. 6,) uses substantially the same terms in conferring jurisdiction upon the court, only that the different sections of the former acts are there brought together and consolidated in one. The Rev. Code of 1854, (ch. 33, sec. 6,) follows the Rev. Statutes, only adding “or otherwise” to the word “ appeal,” but it is manifest the terms'“or otherwise” were intended to embrace only a proceeding in the nature of, and as a substitute in certain cases for, an appeal, to wit, a
 
 certiorari,
 
 because the provision which follows, is identical
 
 *216
 
 with that contained in the Nev. Statutes, and in the first act of 1818, which is, that “ in every case, the court may render such sentence, judgment and decree, as, on inspection of the whole record, it si mil appear to them ought in law to be rendered thereon.” This is rendered still more certain by the new provisions contained in the 19th section of the same chapter of the Nev. Code, in which it is declared that
 
 “
 
 bills of review and writs of error in civil cases, for any error apparent in the final decree or judgment of the Supreme Court, may be brought in that court within two years after such decree or judgment shall be recorded or enrolled.” It can hardly be 'conceived that, if the legislature intended to confer upon this Court the power to issue writs of error to the Superior Court, it would not have given it in express terms, instead of leaving it to be inferred from the expression “ on appeal or otherwise.”
 

 If any further argument be needed to show that this Court has no power to issue writs of error to the Superior Courts, one of no little weight may be derived from the facts that in the original establishment of our court system in 1777, authority to issue such writs to the courts of picas and quarter sessions) was given in positive and direct terms, and has been continued both in the Nevised Statutes of 1836, and the Nevised Code of 1854. See act of 1777, ch. 115, (of the Nevised Code of 1820,) 1 Nev. Stat. ch. 31, sec. 20; Nev. Code, ch. 31, sec. 17. The case of
 
 Haughton
 
 v. Allen, Conf. Nep. 154, referred to by the counsel for the petitioner, does not at all weaken the force of this argument, because it was the case of a writ of error from the Superior to the County Court, and merely decided that the garnishee in an attachment was entitled to the writ for the purpose of reversing, for error, the judgment against him.
 

 There are very good reasons why the power to issue writs of this kind has never been conferred on this Court, some of which are pointed out bty NuffiN, -J., in the case of
 
 Binford
 
 v. Alston, above referred to. Others may be seen by a consideration of the doctrine of writs of error, which are treated of by Sergeant Williams with his accustomed ability in his
 
 *217
 
 elaborate note to 2 Satmd. Rep. 101, See, also, 2 Bac. Abr. Tit. Error; Letter L. p. 497.
 

 As we bold that no writ of error can issue from this Court to the Superior Court, it is unnecessary to consider the errors assigned in the case before us.
 

 Pee. Cubiam, The petition must be dismissed.